IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| EUGENE BLEVINS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] No. 2:20-CV- |
| | ] |
| FLOWERS FOODS, INC., and | ] |
| FLOWERS BAKING CO. OF | ] |
| KNOXVILLE, LLC, | ] |
| | ] |
| Defendants. | ] |

**COMPLAINT**

Plaintiff Eugene Blevins files his claims for retaliatory discharge and employment discrimination against the defendant and avers:

1. The Court is empowered to hear the plaintiff's state law employment discrimination claims and retaliatory discharge claims pursuant to its diversity of citizenship jurisdiction codified at *28 U.S.C. §1332*. The plaintiff's state law age discrimination claims are premised upon the provisions of the *Tennessee Code Annotated* and the Tennessee Human Rights Act codified at *§4-21-401,* and *§4-21-306,* and *T.C.A. §4-21-311*. The plaintiff's state law retaliatory

discharge claims for his having filed and pursued a worker's compensation claim against the defendant are premised upon the provisions of *T.C.A. §50-6-114* and Tennessee common law. The plaintiff will be requesting the Court to amend his Complaint to allege federal employment discrimination claims against the defendants under its federal question jurisdiction, codified at *29 U.S.C. §1331*.

2. Plaintiff Eugene Blevins is a white male 56-years-of-age. He resides in Jonesborough, Washington County, Tennessee. At the times pertinent to his employment discrimination and retaliation claims, the plaintiff worked for Flowers Bakery at its Gray, Washington County, Tennessee warehouse. The plaintiff is a citizen of the State of Tennessee for purposes of this Court's diversity of citizenship jurisdiction,

3. Defendant Flowers Foods, Inc. is a national baking company headquartered in Thomasville, Georgia. It bakes and packages various types of breads, rolls, buns, cakes, cookies, and snack foods for delivery to various supermarkets, restaurants, big chain stores, and convenience markets in the United States. Flowers Foods bakes breads which bear brand names such as Nature's Own Bread, Merita, Kerns, and Tastykakes. The company is worth billions of dollars and is registered on the New York Stock Exchange. Flowers Foods employs more than nine thousand individuals and does business in Tennessee and in numerous states through wholly-owned and centrally controlled limited liability

companies. Flowers Foods, Inc. is headquartered at 1919 Flowers Circle, Thomasville, Georgia 31757-1137. It is a citizen of the state of Georgia for purposes of this Court's diversity of citizenship jurisdiction.

4. In 2013 and 2014, Flowers Foods, Inc. constructed a bakery and warehouse distribution facility on the Clinton Highway in Knoxville Tennessee and began doing business in the East Tennessee through that bakery known as Flowers Baking Co. of Knoxville, LLC. The company's Secretary of State corporation records list the headquarters and principal place of business of Flowers Baking Co. of Knoxville, LLC as being located at 1919 Flowers Circle, Thomasville, Georgia, the same address as Flowers Foods, Inc., and states that it is member-managed. The defendant Flowers Baking Co. of Knoxville is a citizen of the state of Georgia for purposes of this Court's diversity of citizenship jurisdiction. Through its Knoxville-based bakery and various distribution centers, Flowers Foods, Inc. provides baked goods to various stores and restaurants in the East Tennessee, southwest Virginia, and eastern Kentucky areas.

5. Flowers Foods, Inc. controls all of the significant personnel and management decisions of Flowers Baking Co. of Knoxville and its other operating local LLC units, determines the managerial and operational polices of all Flowers Baking affiliated entities and other operating local LLC units, and sponsors all the employee benefit plans including pension plans, health insurance plans, and 401k

3

plans for its employees at its various operational units. Flowers Foods transfers managerial level employees among its various local LLC operating units to assist in operating those units. Flowers Foods, Inc., is doing business in Tennessee as Flowers Baking Co. of Knoxville, LLC, and is the alter ego for Flowers Baking Co. of Knoxville, LLC and its other Tennessee baking units. The two defendants are a joint or unified employer of the plaintiff for purposes of his employment discrimination and retaliation claims. Defendant Flowers Foods, Inc. is being served by delivering the process to its registered agent listed by the Georgia Secretary of State's office as Corporation Service Company, 40 Technology Parkway South, #300, Norcross GA 30092. Defendant Flowers Baking Co. of Knoxville, LLC, is being served by delivering process to its registered agent listed as Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312. The plaintiff's Complaint refers to both of the Flowers' defendant unified business entities as the "defendant," as "Flowers" and "Flowers Foods."

      6. The plaintiff was hired as the defendant's Big Stone Gap warehouse sales manager for Flowers Foods in 2002. He subsequently transferred to the Flowers Gray Tennessee warehouse in 2008 for better employment opportunities. As one of two Gray sales managers, the plaintiff supervised 15 individuals who ran the delivery routes established by Flowers and delivered Flowers' bread and baked goods to various retail stores. The plaintiff also "filled in" as a substitute route

driver when one of the "independent contractor" deliverymen was off work. Brian Lowe, who was in his mid-forties when the plaintiff was discriminatorily removed from his management position in November 2017, was, and still is the other Gray warehouse sales manager.

7. On November 27, 2016, the plaintiff injured his back while lifting and stacking empty trays at the Gray warehouse. A medical examination revealed that Mr. Blevins had ruptured a disc. Workers' compensation authorized orthopedic surgeon James Brasfield performed disc surgery on March 24, 2017. The plaintiff recuperated and was off work until June 12, 2017.

8. After the plaintiff returned to his supervisory duties, the work schedule required that for nearly two weeks in each month he had to fill-in as a "substitute" deliveryman on the bakery delivery routes. Most of the delivery routes which ran in the Kingsport and Greeneville areas took about 12-hours a day to complete.

9. The plaintiff also prepared and sent daily and weekly reports to John Hodges, the 29-year-old Director of Sales for the Knoxville operational LLC for Flowers Foods and advised the "independent" route drivers about Flowers' periodic "store specials." Ms. Blevins engaged in customer service and customer relations visits to various retail outlets and restaurants in his area.

10. Mr. Blevins noticed that Director Hodges did not communicate

with him as frequently as he had before he had sustained his back injury. However, Hodges never complained that the plaintiff's job performance was less than satisfactory.

11. The plaintiff eventually settled his claim for worker's compensation benefits based on a 7% permanent anatomical impairment rating on November 3, 2017. As part of the state approved sentiment, Mr. Blevins retained the right to receive all necessary future medical treatment for his back.

12. Within days after Mr. Blevins had settled his workers' compensation claim, corporate management called him and the other east Tennessee sales managers to a meeting at Flowers warehouse office on the Clinton Highway in Knoxville, Tennessee. Before the general meeting started, Vice-President Kenneth Cellers called out the names of the six oldest warehouse sales managers and directed them to follow him into a separate room. The oldest sales managers were plaintiff Blevins, Barry Foster, Tracy Davis, Andy Bennett, Mike Stevens, and Jason Hart.

13. V-P Kenneth Cellers, Director of Sales John Ryan Hodges, and Human Resources Manager Bobby Brown met with the six older East Tennessee area sales managers for the company. V-P Cellers announced that management was making changes which would benefit the company. Cellers stated that from that day forward, the six older sales managers were being "reassigned" to run "open"

delivery routes. Cellers announced that the older sales managers that we would no longer perform any sales manager activities. The announcement surprised and upset the plaintiff and the five other older sales managers.

14. V-P Cellers looked at the plaintiff and asked why he looked upset. Mr. Blevins asked V-P Cellers "why?" and stated that he felt betrayed after all of the years he had with the company. Plaintiff Blevins added that he "was being done bad." V-P Cellers responded that at least each of the older sales managers had still had a job. Cellers then told the older demoted former sales managers to "go home."

15. The younger sales managers who were not "demoted" stayed for a three-hour sales and operations meeting. To save the company money, and not expecting a demotion, the plaintiff had driven a bread truck to the Knoxville meeting and had to wait on the younger Gray warehouse manager to finish with the longer meeting so he could ride home with him.

16. A week after the discriminatory demotion, Sales Director Hodges assigned the plaintiff to run an "open" route in Knoxville, Tennessee, well outside of his former sales territory. The new assignment was discriminatory and required that the older plaintiff work between 100 and 120 hours during the five days work week in order to complete the extended route which ran from Knoxville, to Lenoir, to Loudon, and back to Knoxville.

17. The discriminatorily extended new delivery route work required the plaintiff to load and unload the company's delivery truck, make the necessary delivery entries in the company's computer before and after delivery, and drive to and unload the bakery products at approximately twenty-four (24) customer stops. In order to perform his discriminatorily assigned and more onerous job duties, the plaintiff stayed in the Hampton Inn in Knoxville, on Monday, Thursday, and Friday nights.

18. After the discriminatory demotion, the plaintiff was no longer included in management level e-mails and communications. Sales Director Hodges and V-P Cellers no longer spoke to him.

19. The plaintiff performed his more arduous work duties satisfactorily. However, the hard physical work aggravated his existing back disability. In March 2018, surgeon Dr. Brasfield prescribed Lyrica for the plaintiff to help alleviate his pain.

20. The plaintiff had to seek medical treatment at the Johnson City Medical Center's Emergency Room on July 11, 2018 for high blood glucose levels and excruciating back pain. Dr. John Shupe, the plaintiff's personal physician, subsequently put the plaintiff off work on short term disability on July 16, 2018. The plaintiff's exacerbated back pain kept him from sleeping four nights out of seven nights each week.

8

21. The plaintiff finally received an appointment with workers' compensation physician Brasfield on August 13, 2018. Dr. Brasfield saw the plaintiff again on September 10 and arranged for him to have an epidural steroid injection on September 21, 2018. However, the injection relieved Mr. Blevin's back and leg pain for only two days.

22. The plaintiff's subsequent visits to Dr. Brasfield in October resulted in the physician's ordering an EMG study and then a myelogram for the plaintiff. The defendant company discriminatorily refused to approve the myelogram. The plaintiff's blood sugar returned to normal and he was released to return to work on November 15, 2018.

23. Sales Director Hodges announced to the plaintiff that he could complete the training of a new route man for the company's Marion, Virginia area, which ran out of a company warehouse in Marion, Virginia. After two days, the "new" man was discharged for events which had occurred while the plaintiff had been out of work. Hodges told the plaintiff that he had to shoulder the entire load of the Marion Virginia delivery route.

24. The plaintiff had to drive to Flowers' Marion Virginia warehouse, perform the same computer and heavy bread loading work which he had done on the more arduous Knoxville route, and then run the Marion, Virginia route which had approximately twenty (20) stops.

25. The plaintiff's back condition continued to worsen as he worked the defendant's Marion route. On December 31, 2018, Dr. Brasfield advised the plaintiff that his continuing pain is a result of his original on-the-job back injury and recommended that he undergo a spinal fusion. However, the defendant company refused to approve its own authorized physician's recommendation.

26. Desperate to relieve the excruciating pain in order to remain employed, the plaintiff consulted an attorney in January 2019. On January 23, 2019, the plaintiff filed a Petition for Benefits Determination with the Tennessee Bureau of Workers' Compensation requesting the additional necessary medical treatment recommended by his treating physician but which Flowers Foods was denying him.

27. Within two weeks, on February 7, 2019, Sales Manager Hodges telephoned the plaintiff while he was staying in Marion, Virginia after a completed route run and ordered him to drive to the Gray, Tennessee warehouse for a meeting the next day.

28. The plaintiff met Hodges at the Gray warehouse on February 8. HR Manager Bob Brown and Distributor Co-ordinator Tony Clark were also present. Brown falsely claimed that the plaintiff and he had discussed "a position" a year ago," and added that nothing had "come up" so the company had to let the plaintiff go.

29. Hodges and Brown admitted to the plaintiff that there had been no customer complaints about the plaintiff and that his work efforts were "good." The plaintiff reminded the corporate managers that he had won several company sales contests.

30. The plaintiff then told both Hodges and Brown that the company's discharging him was willful and bad faith age discrimination and deliberate and malicious retaliation over his workers' compensation claim. Both men shook their heads from side to side but said nothing. The plaintiff refused to immediately sign the paltry severance package the managers offered him.

31. The plaintiff has not been able to locate comparable employment in the area. He has been running a delivery route for another company for less than one-half the pay which he received at Flowers and has lost all his health insurance benefits, vision and dental benefits, and life and cancer insurance benefits. Fortunately, the plaintiff's current job is not as onerous and painful as the extended "open" delivery route work to which Flowers discriminatorlly assigned the plaintiff after it willfully and discriminatorily demoted him in November 2017.

32. **Employment discrimination.** The facts and circumstances above show that Flowers deliberately and maliciously discriminated and retaliated against the plaintiff because of his age in violation of the THRA and/or because he had

just filed an official claim for medical benefits under Tennessee workers' compensation statutes. The plaintiff subsequently filed federal age and disability discrimination administration charges against the defendant with the EEOC. He has not yet received his right-to-sue letter. When he receives it, plaintiff Blevins will request that the Court allow him to amend his Complaint to included federal law employment discrimination claims under the ADEA and the ADA.

33. Defendant Flowers' discrimination and retaliation were willful, deliberate, malicious, in bad faith, and in reckless disregard of the plaintiff's federally-protected and state-protected employment rights. As a result of Flowers' continuing pattern of employment discrimination/retaliation which culminated in its discriminatorily/retaliatorily discharging the plaintiff in February 2019, plaintiff Blevins has suffered embarrassment, humiliation, and mental anguish and physical distress. His enjoyment of life has been diminished and his earning capacity has been impaired.

34. Flowers' employment discrimination and retaliation violated the provisions of the Tennessee Human Rights Act, and Tennessee common law, and federal employment discrimination statutes. The plaintiff is entitled to awards of compensatory damages and lost wages under the THRA, and Tennessee common law. He is entitled to awards of punitive damages under the Tennessee worker's compensation retaliation law.

12
Case 2:20-cv-00019-TAV-CRW   Document 1   Filed 02/05/20   Page 12 of 16   PageID #: 12

35. The plaintiff avers that Flowers' assigning the plaintiff to a series of onerous route delivery jobs beginning in November 2017 and removing his managerial duties and responsibilities constituted a continuing pattern of bad faith and malicious age discrimination and disability discrimination under federal and state employment discrimination law which was intended to humiliate and distress the plaintiff and to force him to resign. The defendant's bad faith discrimination continued through February 7, 2019, when Flowers discriminatorily and retaliatorily discharged him. The defendant's malicious employment actions described herein adversely affected the ability of the plaintiff to perform his job duties, were objectively and subjectively hostile, offensive, and demeaning and constituted a hostile work environment.

36. **Retaliator Discharge.** Alternately and concurrently, the plaintiff avers that the defendant maliciously and deliberately discharged him because he filed a claim for medical treatment and benefits pursuant to the Tennessee workers' compensation laws. The plaintiff avers that his claim for worker's compensation medical benefits was a substantial motivating factor in Flowers' discharging him. The defendant had been refusing to provide the plaintiff with additional medical treatment for his injured back which was due him under a previously entered worker's compensation settlement agreement order and which was recommended by its authorized treating physician during 2018 and early 2019.

37. In extreme pain, the plaintiff sought legal assistance and filed a workers' compensation petition for benefits determination on January 27, 2019 in which he asked the Worker's Compensation Court to require the defendant to provide him with the recommended additional medical treatment. As a result of the plaintiff's filing his worker's compensation claim, the defendant discharged the plaintiff two weeks later on February 7, 2019. The plaintiff's filling his claim for workers' compensation medical benefits and treatment was a substantial motivating factor in the defendant's discharging him. The defendant's violations of its workers' compensation obligations were intentional, deliberate, malicious, and in bad faith. The plaintiff is entitled to an award of compensatory damages and to an award of punitive damages against the defendant.

38. Under Tennessee law as explained by the Tennessee Supreme Court in *Clanton v. Cain-Sloan,* 677 S.W.2d 441 (Tenn.1984), an employer's discharging an employee because that employee has made a claim for worker's compensation benefits, is a prohibited "device" under *T.C.A. §50-6-114* which ostensibly allows an employer to deliberately avoid paying workers' compensation benefits. At *677 S.W.d2d 445*, the *Clanton* decision concluded that a legal cause of action was impliedly created by the Tennessee worker's compensation statutory scheme to secure the rights of the injured employee and to fulfill the intention of the state legislature.

39. As a result of the defendant's retaliatorily discharging Mr. Blevins for filing his workers' compensation claim for medical benefits, Mr. Blevins has lost wages and benefits, has been unable to locate comparable employment, and has been humiliated, embarrassed, and distressed. His enjoyment of life has been diminished and his earning capacity has been permanently impaired.

WHEREFORE, the plaintiff demands:

1. Judgment against the defendant for an award of compensatory damages under the THRA for its age discrimination in the amount of at least One Million Dollars.

2. Judgment against the defendant under the THRA for an award of lost wages and lost employment benefits in the amount of at least $250,000.00.

3. Judgment against the defendant for compensatory damages in the amount of at least $1,000,000.00 for its maliciously and retaliatorily discharging him in violation of the Tennessee Workers' Compensation laws.

4. Judgment against the defendant for punitive damages in the amount of at least $3,000,000.00 for its maliciously and retaliatorily discharging him in violation of the Tennessee Workers' Compensation laws.

5. Judgment against the defendant for all the compensatory and punitive damages, liquidated damages, lost wages, and front pay to which he may be entitled under the ADEA and the ADA after the EEOC issues its right to sue letter and the plaintiff is allowed to amend his Complaint to state additional federal employment discrimination claims against the defendant.

6. A jury to try the plaintiff's legal claims.

7. Reinstatement to his former managerial position and responsibilities with the defendant with commensurate pay raises as an equitable remedy under the THRA.

8. Alternately, an award of front pay to be determined by the Court.

9. An award of attorney's fees as the prevailing party.

10. Such other relief as will make the plaintiff whole.

s/ C. R. DeVault, Jr.
CHARLTON R. DEVAULT, JR.
TN BPR #000428
102 Broad Street
Kingsport, TN 37660
(423) 246-3601
ATTORNEY FOR THE PLAINTIFF